IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARTEAL ROBINSON, | ) | CASE NO. 1:15-cv-02439 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHELE MILLER, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Marteal Robinson ("Petitioner" or "Robinson"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition") on November 25, 2015.  Doc. 1. Robinson challenges the constitutionality of his conviction and sentence in *State of Ohio v. Robinson*, Case No. CR-14-582930 (Cuyahoga County).  Doc. 1.   On September 19, 2016, Robinson filed a "Motion to Stay Proceedings in his 28 USC 2254 Application for a Writ of Habeas Corpus" ("Motion to Stay"). Doc. 14.

Following a jury trial, Robinson was found guilty of two counts of aggravated robbery, with firearm specifications; two counts of kidnapping, with firearm specifications; and one count of having weapons while under disability.  Doc. 11-2, p. 8.  The trial court sentenced Robinson to a total of 10 years in prison. Doc. 11-2, p. 9.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  Doc. 4.  For the reasons set forth herein, the undersigned recommends that the Court **DENY** Robinson's Petition (Doc. 1) and **DENY** Robinson's Motion to Stay (Doc. 14).

1

# I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Robinson's conviction as follows:

> {¶ 3} At trial, the state's evidence showed that Robinson, wearing surgical scrubs underneath a clear jacket and a wig under a hat, robbed a Family Dollar Store. He left the store on foot with the money in a store bag. A police officer soon found him in the vicinity and began to chase him. As he fled from the police officer, he shed his clothing and dropped his cell phone. He successfully fled the police, but the police eventually traced the cell phone to him. His DNA was found on some of the items he tossed while running.

> Testimony of the Store Employees

> {¶ 4} On October 16, 2013, Armon Neal, worked at Family Dollar as a cashier. He testified that, around 9:35 p.m., a short man wearing scrubs inside a raincoat and a wig underneath a white hat walked into the store. The man did not respond when Neal greeted him. As Neal prepared to close the store, the assistant store manager, Keisha Jackson, came from the back room. When Neal looked up from the cash register, the man pulled out a black gun and Neal heard the gun cock— Neal recognized the sound because he used to go to the gun range with his grandfather. Neal and Jackson both jumped back, terrified. The man made sure Neal and Jackson saw the gun and then used his hand to hide the gun from the surveillance camera. He then told the two employees to take him to the safe in the back room, even though they tried to tell him the safe was in the front. As they walked toward the back, the man told Neal to slow down, saying "I don't want to have to kill you." The three eventually returned to the front, and the man ordered Jackson to open the store's two safes, one of which took five minutes to open and the other ten. While they were waiting, Neal and Robinson told the customers, who were not aware of what was going on, to leave the store with their goods without payment.

> {¶ 5} As they waited, the man told Neal and Jackson he would share his money if "this comes out right." Once the safes were opened, the man had Jackson double-bag the money with the store bags. He then tucked the gun inside his pants and walked away with the money in the bag, asking "Am I good, Am I good?" Neal took the question to mean if the police would be called. Neal and Jackson shook their head, indicating they would not call the police. After the man left, Neal

immediately called the police.[1] The video tape from the store's surveillance camera was also played. Subsequent to the playing of the video, Neal identified Robinson as the robber from a photo lineup. He also identified him in court.

FN 1 - Neal's 911 call was played for the jury.

{¶ 6} Keisha Jackson, the store's assistant manager, testified that, as she walked to the front to close the store, she saw a man wearing scrubs underneath a clear coat and a wig. When she got to the cash register, she heard a loud "clapping" sound. She turned around to see the man pull a black gun out and point it at her. He tucked the gun under his coat and ordered her and Neal to go to the safe at the back of the store. As they walked to the back, the man kept the gun pointed at her through his coat. Neal was walking a few steps ahead, and the man told him to slow down, saying "My dude, slow down. I don't want to shoot you."

{¶ 7} Because the store's safes were not at the back, they returned to the front. Jackson asked the man not to hurt Neal or her and told him she would give him whatever he wanted. Back at the front, she positioned herself so that she would be visible to the surveillance camera. She put the codes in the safes—there was a small safe and large safe—while the man continued to point his gun at her through his coat. The man became impatient as the larger safe took a while to open, and Jackson thought the man may shoot them. The man stated he would give Jackson and Neal some money if they did not call the police. When both safes opened, Jackson put all the money, including quarters and dimes, in a Family Dollar plastic bag, and double-bagged it. The man then tucked his gun in the front of his pants, told them not to call the police, and left the store. Jackson was not able to identify Robinson from the photo lineup but identified Robinson in court as the robber.

Testimony of the Police Officers

{¶ 8} Officer Kevin Webb of the Bedford police department responded to the dispatch call regarding a robbery at the Family Dollar Store. He drove around in his police vehicle in the vicinity of the store looking for the suspect. Approximately a quarter mile from the Family Dollar store, he spotted an individual on foot matching the description—a shorter, black male wearing a white hat and scrubs underneath a white rain coat. As Officer Webb approached the man, the suspect ran up the driveway of a residential home and then through its backyard, dropping a plastic bag. As he ran, the suspect also took off his plastic raincoat and hat and threw them to the ground.

{¶ 9} Officer Webb pursued him on foot but at one point lost sight of him. Another officer radioed that he spotted the suspect somewhere in the area but was unable to apprehend him. Officer Webb retrieved the plastic bag, which contained bills and rolled coins. Underneath the bag was a cell phone, which the police subsequently traced to Robinson. An Uncle Mike's brand holster for a hand gun

was also discovered on the ground. The gun described by the victims as being used in the robbery was not found.

{¶ 10} Curtiss Jones, a supervisor of the Trace Evidence Department of the County Medical Examiner's Office, and Marissa Esterline, a DNA analysis from the County Regional Forensic Science Laboratory, provided testimony regarding the DNA analysis of the items collected by the police. Robinson was the source of DNA from the holster; he could not be excluded as a contributor to DNA from the wig; and he was excluded as the source of DNA of swabs from the hat. A cell phone company employee testified that the cell phone retrieved from the scene belonged to Robinson.

Defendant's Alibi

{¶ 11} Joanna Cregan, a friend of Robinson, provided an alibi for him. She testified that on October 15, 2013, she picked up Robinson and brought him to her house. Cregan was going through depression around that time, and Robinson talked to her about her emotional issues. They also watched movies that day. He stayed at her house until the evening of October 16. She did not know the exact time he left, other than describing it as "very dark" outside. She dropped him off where she had picked him up the day before, somewhere on the east side of Cleveland. She could not identify the specific location.

*State v. Robinson*, 2015-Ohio-1838, ¶¶ 3-11, 2015 WL 2255079, *1-3 (Oh. App. May 14, 2015);

Doc. 11-2, pp. 68-86.

## II.    Procedural Background

**A.    State Conviction and Sentencing**

On March 4, 2014, a Cuyahoga County Grand Jury indicted Robinson on five counts: Count 1 – aggravated robbery, with one and three year firearm specifications; Count 2 – aggravated robbery, with one and three year firearm specifications; Count 3 – kidnapping, with one and three year firearm specification; Count 4 – kidnapping, with one and three year firearm specification; and Count 5 – having weapons under disability.[1] Doc. 11-2, pp. 1-4.  Robinson, through counsel, entered a not guilty plea to the indictment.  Doc. 11-2, p. 5.  The trial court denied Robinson's motion for jury view and motion for dismissal due to speedy trial and the case

---

[1] The indictment initially listed the victims as Jane and John Doe.  Doc. 11-2, pp. 1-4.  Subsequently, the State of Ohio amended the indictment to reflect the victims' proper names.  Doc. 11-2, p. 6.

4

proceeded to trial.  Doc. 11-2, p. 7.   The jury trial commenced on August 13, 2014.  Doc. 11-2, p. 149.  The jury found Robinson guilty on all counts as charged in the indictment.  Doc. 11-2, p. 8.  On August 20, 2014, the trial court sentenced Robinson.  Doc. 11-2, pp. 9-10.  For purposes of sentencing the trial court merged Count 1 and Count 3 as allied offenses and merged Count 2 and Count 4 as allied offenses.  Doc. 11-2, p. 9.  The State elected to proceed with Counts 1 and 2, the aggravated robbery counts.  Doc. 11-2, p. 9.  The trial court merged the firearm specifications on Counts 1 and 2 for a total of three years to be served prior to and consecutive to the sentence of seven years on Counts 1 and 2 and two years on Count 5, which were run concurrent to each other.  Doc. 11-2, p. 9.  The trial court imposed a total sentence of 10 years in prison, with post-release control.  Doc. 11-2, p. 9.

**B.** **Direct appeal**

Robinson, through counsel, filed an appeal from his conviction and sentence with the Eighth District Court of Appeals on August 28, 2014.  Doc. 11-2, pp. 11-17.  In his appellate brief (Doc. 11-2, pp. 18-40), Robinson raised the following assignments of error:

1. The appellant was denied effective assistance of counsel in violation of the Ohio and United States Constitutions.

   a. Defense counsel was ineffective for failing to object to object [sic] to the prosecutor's use of leading questions and facts not in evidence.

   b. Defense counsel erred by not objecting when the prosecutor failed to properly qualify Deputy Andree as an expert in fingerprint identification and comparison and then elicited testimony and opinions on expert matters for him.

   c. Defense counsel erred by not developing further cross examination of Deputy Andree about his qualifications, underlying information, validity and reliability of his methods and opinion on the expert issues.

   d. Defense counsel erred by not arguing on Rule 29 that the prosecutor presented insufficient evidence as to the Weapons Under Disability

Count, specifically in that prosecutor offered no evidence that the print card on the disabling evidence matched the prints of the appellant.

2.  There was insufficient evidence with respect to the Having Weapons Under Disability count, the gun specifications accompanying the Aggravated Robbery counts and the gun specifications accompanying both Kidnapping counts.

   a.  Having a Weapons [sic] While Under Disability.

   b.  Gun Specifications accompanying the Aggravated Robbery Counts and Kidnapping Counts.

3.  The jury's verdict, with respect to the Having Weapons While Under Disability Count, the gun specifications accompanying the Aggravated Robbery counts and the gun specifications accompanying both Kidnapping counts were against the manifest weight of the evidence.

   a.  The Having Weapon While Under Disability Count.

   b.  The gun specifications accompanying both Aggravated Robbery Counts and the Kidnapping Counts.

Doc. 11-2, pp. 27-33.

On December 17, 2014, the State of Ohio filed its appellate brief.  Doc. 11-2, pp. 41-67.

On May 14, 2015, the Eighth District Court of Appeals affirmed the judgment of the trial court.

Doc. 11-2, pp. 68-86; *Robinson*, 2015 WL 2255079.

On June 22, 2015, Robinson, acting *pro se*, filed a notice of appeal with the Supreme

Court of Ohio.  Doc. 11-2, pp. 87-107.  In his memorandum in support of jurisdiction (Doc. 11-2,

pp. 108-146), Robinson asserted the following propositions of law:

1.  The appellant was denied effective assistance of counsel in violation of the Ohio Art. I, sect[s] 10 and 16 and the 5th, 6th and 14th Amendment[s] of the United States Constitution.

2.  There was insufficient evidence with respect to the having weapons while under disability count, the gun specifications accompanying the aggravated robbery counts and the gun specifications accompanying both kidnapping counts, in violation of the appellant's rights to due process and

equal protection of the law protected by Art. I, Sect. 10 of the Ohio Constitution and the 4th, 5th and 14th Amendment[s] to the United States Constitution.

3.      The jury's verdict, with respect to the having weapons while under disability count, the gun specifications accompanying the aggravated robbery counts and the gun specifications accompanying both kidnapping counts were against the manifest weight of the evidence.  In violation of the appellant's rights to due process and equal protection of the law protected by Art. I, Sect. 10 of the Ohio Constitution and the 4th, 5th and 14th Amendment[s] to the United States Constitution.

Doc. 11-2, pp, 115-126.  On September 30, 2015, the Supreme Court of Ohio declined jurisdiction of Robinson's appeal.  Doc. 11-2, p. 147.

**C.      Federal Habeas Corpus**

On November 25, 2015, Robinson, acting *pro se*, filed his habeas Petition asserting two grounds for relief.  Doc. 1.  On June 9, 2016, Respondent filed a Return of Writ.  Doc. 11.  On July 1, 2016, Robinson filed a Traverse (Doc. 13) and, on September 19, 2016, he filed a Motion to Stay (Doc. 14).  Respondent filed an opposition to Robinson's Motion to Stay on September 20, 2016.  Doc. 15.   Robinson's grounds for relief and motion to stay are discussed more fully below.

### III.      Law and Analysis

**A.      Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

7

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388,

1398 (2011).

**B.    Grounds for Relief**

**1.  Ground One**

> **Ground One:**    The appellant was denied effective assistance of counsel in violation of the Ohio Art. I, Sect[s] 10 and 16 and the 5th, 6th and 14th Amendment[s] of the United States Constitution.

> **Supporting Facts:** Trial counsel rendered constitutionally ineffective assistance when failed to object to (1) the prosecutor asking leading questions when examining Deputy Andree without objections from counsel; (2) the prosecutor did not qualify Deputy Andree as an expert in fingerprint comparison and counsel failed to object, (3) counsel failed to sufficiently cross-examine Deputy Andree about his qualification in fingerprint comparison and reliability of his opinions; and (4) counsel failed to argue in his Crim. R.29 motion that the State was required to fingerprint Robinson in court and compare the fingerprints with the fingerprint card in Case No. CR-07-499561.  If not for trial court's deficient performance, there is reasonable probability that the outcome of the trial would have been different.

Doc. 1, p. 5.

Robinson presented Ground One in his first assignment of error raised in his direct appeal

to the Eighth District Court of Appeals (Doc. 11-2, pp. 27-33) and in his first proposition of law

in his memorandum in support of jurisdiction filed with the Supreme Court of Ohio (Doc. 11-2,

pp. 115-121).

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v.

Lucey*, 469 U.S. 387 (1984).  *Strickland v. Washington*, 466 U.S. 668 (1984), established the

standard for assessing claims of ineffective assistance of counsel, including those relating to

appellate counsel.  Under the *Strickland* standard, to establish that his attorney was

constitutionally ineffective, Robinson must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Thus, judicial scrutiny of counsel's performance under *Strickland* is highly deferential because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable" and, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* As recently restated by the Supreme Court, in order to combat the "natural tendency" to speculate as to whether another strategy may have been more successful, the reasonableness of counsel's challenged performance is to be judged as of the time of counsel's performance. *Maryland, v. Kulbicki*, 136 S.Ct. 2, 4 (2015) (per curiam) (relying on *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) and *Strickland*, 446 U.S. at 690).

To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "An error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) (quoting *Strickland,* 466 U.S. at 691).

When a state court reaches the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. This is so even where a state court's opinion lacks detailed analysis or explanation. In *Harrington*, the Supreme Court held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" 562 U.S. at 100.

Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).

In considering Robinson's assignment of error based on ineffective assistance of counsel, the Eighth District Court of Appeals concluded that the claim had no merit.  More particularly, the state court of appeals stated:

### Ineffective Assistance of Counsel

{¶ 30} To prevail on an ineffective-assistance-of-counsel claim, Robinson must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance will not be deemed ineffective unless the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *State v. Iacona,* 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001).

{¶ 31} Robinson claims four instances of ineffective assistance of counsel. All four relate to the state's evidence regarding his prior disabling offense.

{¶ 32} To show his prior disabling offense, the state introduced as exhibits (1) a notarized judgment entry showing Marteal Robinson was convicted of a felony drug offense in Case No. CR–07–499561 in 2007, (2) a fingerprints card in Case No. CR–07–499561 showing the name Marteal Robinson with a birthday of July 4, 1983, and (3) a fingerprints card in the instant case also showing the name Marteal Robinson with a birthday of July 4, 1983. In addition, the state had Deputy Andree testified regarding these fingerprints cards. He testified about the manner in which the fingerprints cards were collected in the county jail and testified that the fingerprints in the two cards were the same.

{¶ 33} Robinson maintains his trial counsel should have taken the prosecutor to task for failing to show that the Marteal Robinson in Case No. CR–07–499561 was the Marteal Robinson on trial. He claims four instances of ineffective assistance: (1) the prosecutor asked leading questions when examining Deputy Andree without objections from counsel; (2) the prosecutor did not qualify Deputy Andree as an expert in fingerprint comparison and counsel failed to object, (3) counsel failed to sufficiently cross-examine Deputy Andree about his qualification in fingerprint comparison and reliability of his opinion; and (4) counsel failed to argue in his Crim.R. 29 motion that the state was required to fingerprint Robinson in court and compare the fingerprints with the fingerprint card in Case No. CR–07–499561.

{¶ 34} We have already disposed of the last contention and will now address, in turn, the claims regarding improper leading questions and Andree's testimony about his comparison of the fingerprints in the two cards.

{¶ 35} "A leading question suggests an answer or instructs a witness 'how to answer or puts into his mouth words to be echoed back.' " *Proctor v. Kewpee, Inc.,* 3d Dist. Allen No. 1–08–03, 2008–Ohio–5197, ¶ 26, quoting *State v. D'Ambrosio,* 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1993). Evid.R. 611(C) provides that leading questions should not be used on direct examination of a witness "except as may be necessary to develop the witness' testimony." The exception of Evid.R. 611(C) " 'is quite broad and places the limits upon the use of leading questions on direct examination within the sound discretion of the trial court.' " *State v. Flowers,* 8th Dist. Cuyahoga No. 91684, 2009–Ohio–4876, ¶ 28, quoting *State v. Lewis,* 4 Ohio App.3d 275, 278, 448 N.E.2d 487 (3d Dist.1982).

{¶ 36} Robinson claims his trial counsel should have objected when the prosecutor asked Deputy Andree the following two questions:

> [Prosecutor:] And are you able to tell if the fingerprints taken from his old Case 499561 and the fingerprints taken for this new Case 582930 are the same set of fingerprints?

> [Deputy Andree:] I did do a comparison before coming to Court and they are indeed from the same person.

> * * *

> [Prosecutor:] So the Defendant in this current case is the same Defendant from the previous case, Case No. 499561, correct?

> [Deputy Andree:] That's correct.

{¶ 37} Having reviewed the exchange in context, we do not find the first question leading. As to the second question, the phrasing was arguably leading, but it appears to be more the result of the prosecutor trying to move the examination along than to influence the witness's testimony or to supply him with an answer. *Flowers* at ¶ 23.

{¶ 38} Regarding Deputy Andree's testimony about the fingerprints cards, he testified he has worked for 11 years in the county's Scientific Identification Unit, a department responsible for identifications of individuals coming through the county jail. He received initial training in fingerprint classification and comparison at the Ohio Peace Officers Training Academy, and he had attended additional classes at the Cleveland Police Department and the County Medical Examiner's Office. In addition to his qualification, Deputy Andree also provided testimony about how fingerprints cards are collected and processed in the county jail and how fingerprints are compared. He testified he examined the two fingerprints cards and they were from the same person.

{¶ 39} Robinson is correct that expert testimony is necessary for fingerprint comparisons. *State v. Hartman,* 93 Ohio St.3d 274, 284, 754 N.E.2d 1150 (2001). However, neither special education nor certification is necessary to confer expert status upon a witness; Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. *Hartman* at 285. "The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *Id.* The record before us shows that Deputy Andree possessed knowledge on fingerprints that would aid the jury and therefore qualified as an expert in this matter. Robinson's counsel could not be faulted for not challenging the deputy's qualifications to testify about the fingerprints cards.

{¶ 40} In any event, the state produced overwhelming evidence showing Robinson's prior disabling offense: the 2007 judgment entry convicting Marteal Robinson of a felony drug offense in Case No. CR–07–499561, the fingerprint card in Case No. CR–07–499561 belonging to Marteal Robinson (born July 4, 1983), and fingerprint card belonging to Marteal Robinson (born July 4, 1983) in the instant case. Robinson's claim of mistaken identity defies logic and common sense. There is simply no reasonable probability that the outcome of the trial would have been different if his trial counsel challenged the state's evidence on the four occasions. The first assignment is without merit.

*Robinson*, 2015 WL 2255079, *6-8; Doc. 11-2, pp. 81-85.

Robinson's arguments in his Traverse are cursory and amount to a request that this Court consider his claims *de novo*. As is clear from the state court of appeals' decision the state court of appeals considered Robinson's claims of ineffective assistance of appellate counsel in light of the *Strickland* standard, the proper standard for evaluating claims of ineffective assistance of counsel, and found his claims to be without merit.

Robinson contends that the state court of appeals ignored his claim that counsel was ineffective by not arguing in his Rule 29 that the evidence was insufficient to prove his prior disabling offense. Doc. 13, pp. 6-7. His contention is without merit. The state court of appeals did not ignore his claim. The state court acknowledged his claim and indicated that the issue had already been disposed of. Doc. 11-2, p. 83, ¶ 34. Earlier in its decision, when addressing

Robinson's sufficiency of the evidence claim, the state court of appeals addressed Robinson's claim that there was insufficient evidence to establish his prior disabling offense, stating:

> {¶ 18} To show that Robinson was under disability pursuant to R.C. 2923.13, which defines the offense of having weapons while under disability, the state introduced exhibit No. 41, which was a notarized 2007 judgment entry of Cuyahoga C.P. No. CR–07–499561, which reflected defendant Marteal Robinson pleaded guilty to a felony offense of drug possession and received a one-year prison term. The state also submitted exhibit Nos. 42 and 43, which were Robinson's county jail fingerprints cards in Case No. CR–07–499561 and the instant case, respectively. In addition, Deputy Don Andree, trained in fingerprints comparison, testified that he compared the two sets of fingerprints and they were from the same person.
>
> {¶ 19} Robinson argues on appeal that the fingerprint cards only showed that the fingerprints belonged to a "Marteal Robinson"; he argues that in order to prove a prior disabling offense, the state was required to fingerprint him at trial and have those fingerprints compared by an expert with the fingerprints on the fingerprints card in Case No. CR–07–499561.
>
> {¶ 20} Robinson's argument is wholly without merit. The record reflects appellant Marteal Robinson has a birth date of July 4, 1983, which matches the birth date indicated in the fingerprints card in Case No. CR–07–499561. There is no issue of mistaken identity in this case. The state presented sufficient evidence showing Robinson had a prior disabling offense to support his conviction under R.C. 2923.13 and the conviction is not against the manifest weight of the evidence.

*Robinson*, 2015 WL 2255079, *4; Doc. 11-2, pp. 77-78, ¶ 19-20.

Also, when addressing the ineffective assistance of counsel claims, the state court of appeals, in conclusion, stated "There is simply no reasonable probability that the outcome of the trial would have been different if his trial counsel challenged the state's evidence on the <u>four</u> occasions." *Robinson*, 2015 WL 2255079, * 8; Doc. 11-2, p. 85, ¶ 40 (emphasis supplied).

Based on the foregoing, Robinson cannot show that the state court of appeals ignored one of his four ineffective assistance of counsel claims.  Moreover, Robinson does not argue how the state court of appeals' determination with respect to all of his ineffective assistance of counsel

claims was contrary to or an unreasonable application of *Strickland*.[2]  Rather, as stated earlier, his arguments amount to a request that this Court consider his claims *de novo*.   However, since the state court of appeals adjudicated his ineffective assistance of counsel claims on the merit, there is a double layer of deference applicable to the Court's review of an ineffective assistance of counsel claim.  As stated by the Supreme Court, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [since] [t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington,* 562 U.S. 86, 105, 131 S.Ct. 770, 788 (internal citations omitted).  Here, Robinson has failed to overcome the double and highly deferential standards applicable to the Court's review of his *Strickland* claims.  He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Dixon*, 132 S. Ct. at  27  (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

Based on the foregoing, the undersigned recommends that the Court find that the state court of appeals' determination that Robinson's ineffective assistance of counsel claims were without merit was not contrary to or an unreasonable application of clearly established federal law and **DENY** Ground One.

### 2.  Ground Two

**Ground Two:** There was insufficient evidence with respect to the having weapons while under disability count, the gun specifications accompanying the aggravated robbery counts and the gun specifications accompanying both kidnapping counts.  In violation of the appellant's rights to due process and equal protection of the law protected by Art. I, Sect. 10 of the Ohio Constitution and the 4th, 5th, and 14th Amendment[s] to the United States Constitution.

---

[2] Robinson's attempt to seek federal habeas relief by challenging the state court of appeals' determination that Deputy Andree was qualified as an expert under Ohio's rules of evidence (Doc. 13, pp. 4-5) is misplaced because a federal habeas court is "bound by the state court's determination of its own law."  *Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

**Supporting Facts:**  There was insufficient evidence to support the petitioner's conviction for weapons under disability and the attending gun specification's accompanying the aggravated robbery and kidnapping counts.

Doc. 1, p. 6.

Robinson presented Ground Two in his second assignment of error raised in his direct appeal to the Eighth District Court of Appeals (Doc. 11-2, pp. 33-36) and in his second proposition of law in his memorandum in support of jurisdiction filed with the Supreme Court of Ohio (Doc. 11-2, pp. 121-125).

*Sufficiency of the evidence standard*

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not "whether the trier of fact made the *correct* guilt or innocence determination but, rather whether it made a *rational* decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).   Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d

423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Snyder v. Marion Correctional Inst., Warden*, 608 Fed. Appx. 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

<u>Application of sufficiency of evidence standard to Robinson's claim</u>

Given that it is not for this Court to "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our  judgment for that of the jury[,]" *Brown*, 567 F.3d at 205, and upon considering the evidence in the light most favorable to the prosecution, the undersigned finds that a rational trier of fact could have found the essential elements of the crime of having weapons while under disability and the gun specifications beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.  Moreover, in light of the second layer of deference accorded to the state court's adjudication of a sufficiency claim, even if this Court concluded that a rational trier of fact could not have found guilt beyond a reasonable doubt, federal habeas relief is only warranted when the state court of appeals' sufficiency determination is unreasonable.

Here, the state court applied the correct standard under *Jackson* when assessing Robinson's sufficiency of the evidence claim. *Robinson*, 2015 WL 2255079, * 3; Doc. 11-2, p. 76, ¶ (stating that the relevant inquiry for a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.").  More particularly, in analyzing Robinson's sufficiency of the evidence claim, the appellate court stated:

> Sufficiency and Manifest Weight Claims[3]
>
> {¶ 14} Robinson's sufficiency and "manifest weight" claims both focus on the gun offenses. He claims his conviction of having weapons while under disability and the gun specifications are not supported by sufficient evidence and are against the manifest weight of the evidence.
>
> {¶ 15} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*
>
> {¶ 16} While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).
>
> > "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury

---

[3] Although raised in state court, Robinson did not raise a manifest weight of the evidence claim in his habeas petition.  However, in his Traverse, he argues manifest weight of the evidence as a third ground for relief.  Doc. 13, pp. 12-13.  The Court need not consider claims first raised in a Traverse.  *See Jalowiec v. Bradshaw*, 657 F.3d 293, 311-312 (6th Cir. 2011). Additionally, even if properly raised, Robinson's manifest weight of the evidence claim would not be cognizable on federal habeas review. *See Brown v. Moore*, 2008 WL 4239160, *8 (S.D. Ohio 2008) ("A 'manifest weight of evidence' claim, which is based on a state law concept that is 'both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding.") (citing 28 U.S.C. § 2254(a) and *Pulley v. Harris*, 465 U.S. 37, 41 (1998))

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). When reviewing a manifest weight clam, we are mindful that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230, 227 N .E.2d 212 (1967), paragraph one of the syllabus. The jury is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis,* 8th Dist. Cuyahoga No. 98538, 2013–Ohio–1184, ¶ 18.

{¶ 17} With these standards of review in mind, we now consider Robinson's claims regarding his conviction of the gun charges.

*Robinson*, 2015 WL 2255079, *3-4; Doc. 11-2, pp. 75-77, ¶¶ 14-17.

The state court of appeals proceeded to consider both of Robinson's claims of insufficient evidence. First, with respect to Robinson's claim that there was insufficient evidence to convict him of having weapons while under disability, the state court of appeals stated:

### Having Weapons While Under Disability

{¶ 18} To show that Robinson was under disability pursuant to R.C. 2923.13, which defines the offense of having weapons while under disability, the state introduced exhibit No. 41, which was a notarized 2007 judgment entry of Cuyahoga C.P. No. CR–07–499561, which reflected defendant Marteal Robinson pleaded guilty to a felony offense of drug possession and received a one-year prison term. The state also submitted exhibit Nos. 42 and 43, which were Robinson's county jail fingerprints cards in Case No. CR–07–499561 and the instant case, respectively. In addition, Deputy Don Andree, trained in fingerprints comparison, testified that he compared the two sets of fingerprints and they were from the same person.

{¶ 19} Robinson argues on appeal that the fingerprint cards only showed that the fingerprints belonged to a "Marteal Robinson"; he argues that in order to prove a prior disabling offense, the state was required to fingerprint him at trial and have those fingerprints compared by an expert with the fingerprints on the fingerprints card in Case No. CR–07–499561.

{¶ 20} Robinson's argument is wholly without merit. The record reflects appellant Marteal Robinson has a birth date of July 4, 1983, which matches the birth date

indicated in the fingerprints card in Case No. CR–07–499561. There is no issue of mistaken identity in this case. The state presented sufficient evidence showing Robinson had a prior disabling offense to support his conviction under R.C. 2923.13 and the conviction is not against the manifest weight of the evidence.

*Robinson*, 2015 WL 2255079, *4; Doc. 11-2, pp. 77-78, ¶¶ 18-20.

Robinson contends that "there was absolutely no evidence presented that [he] was under a disability at the time of the offenses in question."  Doc. 13, p. 9.   However, as reflected in the state court of appeals' analysis of Robinson's sufficiency of the evidence claim, there was evidence presented from which the jury could conclude that Robinson was under a disability at the time of the offense.  Further, it is not for this federal habeas court to reweigh the evidence and it cannot be said that the state court of appeals' sufficiency determination regarding the charge of having weapons under disability was unreasonable.  Accordingly, deference is due the state appellate court's sufficiency determination. *See Brown*, 567 F.3d at 205 *; see also White*, 602 F.3d at 710.

Next, with respect to Robinson's claim that there was insufficient evidence to find him guilty of both the one-year and three-year gun specification charges, the state court of appeals stated:

Gun Specifications

{¶ 21} Robinson was found guilty of both the one-year and three-year gun specifications under R.C. 2941.141 and 2941.145, respectively. The former requires the state to prove that the defendant "had a firearm on or about the offender's person or under the offender's control while committing the offense"; the latter requires the state to prove that, in addition, the defendant "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 22} Moreover, "firearm" is defined in R.C. 2923.11(B) as a "deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1).

{¶ 23} The statute goes on to state that

> [w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

R.C. 2923.11(B)(2).

{¶ 24} In addition, we note that

> [a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

*Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), at syllabus.

{¶ 25} Where no shots are fired and the firearm is not recovered, such as in the instant case, circumstantial evidence, including the representations and actions of the person in possession of the gun, are of crucial importance, when we evaluate the evidence of a firearm's operability. *State v. Fulton,* 8th Dist. Cuyahoga No. 96156, 2011–Ohio–4259, ¶ 34, citing *State v. Ware,* 9th Dist. Summit No. 22919, 2006–Ohio–2693, ¶ 13.

{¶ 26} Here, the gun used in the robbery was never recovered. As such, the state could not perform any lab tests to determine whether the gun was operable. Instead, the state relied on the testimony from the two store employees to show that Robinson displayed an operable gun and used it to facilitate the robbery. Both employees testified they heard a noise from the gun, which was described by the cashier as "cocking" and by the assistant manager as a loud clapping sound. They both saw Robinson pull a black gun out, and the assistant manager testified that the gun was pointed at her throughout the entire incident. When Robinson had the employees take him to the back of the store, he threatened to shoot the cashier when he felt the cashier was moving too fast.

{¶ 27} Robinson's words and actions during the robbery, as testified to by the witnesses, implied that his gun was operable. As such, the state presented sufficient, albeit circumstantial, evidence upon which a reasonable jury could find

the gun used in the robbery was operable. *See also State v. Jackson,* 11th Dist. Lake No.2012–L–061, 2013–Ohio–4846 (the testimony of victims constituted circumstantial evidence to show the gun was operable because defendant threatened to shoot the victims if they did not tell him where the money was located); *State v. Woodson,* 8th Dist. Cuyahoga No. 96538, 2012–Ohio–172 (the gun's operability was supported by the testimony from the victims that defendant pointed gun at them, told them to get down, and threatened to kill them); *In re Wallace,* 5th Dist. Stark No.2007CA00156, 2008–Ohio–1389 (the operability of the firearm could be inferred from appellant's actions of sticking a gun in the victim's face and demanding her purse). Robinson's sufficiency challenge regarding the gun specifications fails.

*Robinson*, 2015 WL 2255079, *4-5; Doc. 11-2, pp. 78-81, ¶¶ 21-27.

While acknowledging that circumstantial evidence may be relied upon to establish operability of a firearm (Doc. 13, pp. 11-12), Robinson nevertheless contends that the victims' testimony regarding his actions and representations during the robbery was insufficient to convict him of the firearm specifications. His claim fails. As indicated by the state court of appeals, although the gun was never recovered, there was evidence from both victims, albeit circumstantial evidence, from which a reasonable jury could conclude that the firearm used by Robinson during the robbery was operable. Furthermore, he has failed to demonstrate that the state court of appeals' well-reasoned sufficiency determination with respect to the gun specification charges was unreasonable. Accordingly, deference is due the state appellate court's sufficiency determination. *See Brown*, 567 F.3d at 205 ; *see also White*, 602 F.3d at 710.

Based on the foregoing, the undersigned recommends that the Court **DENY** Ground Two.

### IV.     Request for Stay and Abeyance

After filing his Traverse, Robinson filed a Motion to Stay. Doc. 14. In his Motion to Stay, Robinson requests that the Court stay the within habeas proceedings so that he may return to state court to file an Ohio Appellate Rule 26(B) application to reopen his direct appeal for the purpose of asserting ineffective assistance of appellate counsel. Doc. 14. He asserts that, in his

application to reopen his direct appeal, he intends to argue that his appellate counsel was ineffective for failing to raise the following issues in his original appeal: (1) trial counsel was ineffective for failing to use peremptory challenges to excuse biased jurors; (2) trial court violated Robinson's fast and speedy trial rights; (3) prosecutorial misconduct for admitting items obtained in violation of Robinson's Fourth Amendment rights (the state used illegally obtained evidence obtained without a legal search warrant); (4) trial counsel was ineffective for failing to object to the admission of evidence illegally seized; and (5) Robinson was never properly mirandized. Doc. 14, pp. 1-2. Respondent has opposed Robinson's Motion to Stay. Doc. 15.

Under *Rhines v. Weber*, 544 U.S. 269 (2005), a district court has discretion to stay a mixed petition, i.e., a petition containing both exhausted and unexhausted claims. As stated in *Rhines*, however, "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings [and] . . . undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his habeas petition." *Rhines*, 544 U.S. at 277. Thus, stay and abeyance is only appropriate in limited instances such as "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.*

Robinson's Petition includes two grounds for relief that were both exhausted. Thus, Robinson's Petition is not a mixed petition. Furthermore, as set forth above, the two grounds for relief that were included in Robinson's Petition should be denied on the merits. Accordingly,

since Robinson's Petition is not a mixed petition[4] and since the claims raised in the Petition are without merit, the undersigned recommends that the Court **DENY** Robinson's motion for a stay to pursue claims not included in his Petition.

### V.    Conclusion and Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY** Robinson's Petition (Doc. 1).  Further, the undersigned recommends that the Court **DENY** Robinson's Motion to Stay (Doc. 14).

Dated: October 13, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[4] Assuming *arguendo* that Robinson had included in his Petition unexhausted claims regarding ineffective assistance of appellate counsel such that his Petition could be considered a mixed petition, he has not demonstrated entitlement to a stay and abeyance under *Rhines*.  Robinson has not shown good cause sufficient to allow him to delay the within proceedings to assert new claims almost a year after filing his habeas Petition and the conclusion of his direct appeal in the state courts (Doc. 11-2, p. 147 (Supreme Court of Ohio, September 30, 2015, Entry declining jurisdiction of Robinson's appeal)).  In essence, Robinson seeks a do-over.